IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2017

## STATE OF TENNESSEE v. WILLIE HARDY, JR.

### Appeal from the Circuit Court for Montgomery County
No. 41400478    Ross Hicks, Judge

---

### No. M2016-01748-CCA-R3-CD

---

The defendant, Willie Hardy, Jr., appeals his Montgomery County Circuit Court jury conviction of aggravated robbery, claiming that the evidence was insufficient to support his conviction and that the sentence imposed was excessive.  Because the trial court failed to make the requisite findings, we vacate the trial court's imposition of consecutive sentencing and remand for the limited purpose of making the appropriate findings on this issue.  In all other respects, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed in Part; Vacated in Part; Remanded

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined.  JOHN EVERETT WILLIAMS, J., filed a separate concurring and dissenting opinion.

Joshua W. Etson (on appeal) and Chase Smith (at trial), Clarksville, Tennessee, for the appellant, Willie Hardy, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Assistant Attorney General; John W. Carney, District Attorney General; and C. Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Montgomery County Grand Jury charged the defendant with one count each of aggravated robbery, being a felon in possession of a handgun, misdemeanor evading arrest, misdemeanor assault, and resisting arrest.[1]  Before trial, the defendant

---

[1]    The defendant was also charged with one count of possession of drug paraphernalia, but this count was later dismissed.

pleaded guilty to being a felon in possession of a handgun, evading arrest, assault, and resisting arrest. The trial court conducted a jury trial on the sole remaining charge of aggravated robbery in March 2015.

The State's proof at trial established that Ricardo Carter, the victim, met Danielle Vineyard in January 2014 on a social media website, and the two arranged to get together at a local Econolodge to smoke marijuana. The victim admitted that he also sold some marijuana to Ms. Vineyard on this occasion. Approximately two days later, the victim again met with Ms. Vineyard at the Econolodge, and he again sold marijuana to her. On both of these occasions, Ms. Vineyard was alone at the motel.

On January 30, the victim made arrangements to meet Ms. Vineyard at the Econolodge a third time. On this occasion, the two, through text messages, agreed to split the $1,200 cost of a quarter-pound of marijuana. When the victim arrived at the motel, he had $380 in cash on his person, and he explained to the jury that the remaining money was in his vehicle. When the victim approached the motel room door, Ms. Vineyard was waiting outside and asked the victim to enter the room. As soon as the victim entered the room, the defendant stepped from behind the door, pointed a pistol at the victim's head, and demanded that the victim surrender his money and "everything [he] had." The victim described the weapon as a black and silver automatic handgun, and the victim testified that he had never seen the defendant before this instance.

The victim immediately tried "to rush" the defendant, and the two began to tussle. The victim attempted to leave the room, but Ms. Vineyard grabbed the victim's leg, causing him to fall, and the defendant struck the victim in the mouth with the handgun. At this point, the victim "just gave up." While the defendant continued to aim the handgun at the victim, Ms. Vineyard took the victim's wallet, cellular telephone, and cash from his pockets. The defendant then directed Ms. Vineyard to "meet [him] at Wal-Mart," and Ms. Vineyard left the room. The defendant instructed the victim to remove his clothing, and when the victim was clad in nothing but boxer shorts, he took the opportunity to flee to the bathroom and lock the door behind him.

After waiting approximately 10 minutes, the victim emerged from the bathroom and found the motel room empty. The victim redressed and proceeded directly to the motel manager's office, where he informed the manager of what had transpired and asked him to call the police. The victim admitted that he was not initially scared of the handgun.

Nilesh Shaw, the manager of the Econolodge, was working on the night of January 30 when the victim arrived in the lobby and claimed that he had been robbed. At the victim's request, Mr. Shaw contacted the police. Mr. Shaw testified that the

Econolodge was equipped with electronic surveillance equipment and that he had given a copy of the surveillance footage to the police.

Clarksville Police Department ("CPD") Detective Greg Rosencrants investigated the victim's armed robbery. Detective Rosencrants reviewed the surveillance footage from the Econolodge. Through the detective's testimony, the State introduced into evidence still photographs taken from the footage which depicted both the defendant and Ms. Vineyard walking down the steps of the Econolodge on the night of January 30.

Detective Rosencrants sent out a description of the defendant and Ms. Vineyard, and the two were taken into custody a short time later. A photograph of evidence collected from the defendant and Ms. Vineyard showed over $200 in cash, a receipt from the Econolodge, Greyhound bus tickets, three cellular telephones, motel room keys, and several rounds of nine-millimeter ammunition. In addition, the State introduced into evidence a photograph of the black and silver handgun that was in the defendant's possession at the time of his arrest.

Detective Rosencrants also discovered the defendant's Facebook page. At 11:54 p.m. on January 30, a photograph was posted to his page depicting over $500 in $20 bills, and the photograph appeared to have been posted by the defendant. According to Detective Rosencrants, the defendant had approximately $565 in cash on his person at the time of his arrest.

CPD Detective Debra Kolofsky testified as an expert in the field of mobile device forensics. Detective Kolofsky performed forensic examinations on three cellular telephones: an LG android ("LG"), a Samsung GS android ("Samsung GS"), and a Samsung TracFone ("Samsung TF"). Detective Kolofsky discovered that a "factory reset" had been performed on the LG at 11:50 p.m. on January 30, and she found three photographs of the defendant and Ms. Vineyard on the LG that were taken at 11:51 p.m. With respect to the Samsung GS, Detective Kolofsky found text messages sent from the LG to the Samsung GS between 11:38 a.m. and 8:59 p.m. on January 30. Detective Kolofsky testified that the Samsung TF was a prepaid telephone and that she found no communications between it and the LG.

Ms. Vineyard testified that the victim had come to her motel room to sell marijuana to her on two occasions prior to January 30. Ms. Vineyard explained that, on January 30, the defendant planned to rob the victim when the victim arrived at the room to sell Ms. Vineyard two ounces of marijuana. Ms. Vineyard stated that, when the victim entered her motel room, the defendant was standing behind the door. The defendant pointed his handgun at the victim and told the victim "to give up everything." After a

brief scuffle, the victim "threw his money and everything out of his pockets on the ground." Ms. Vineyard explained that the defendant had told her to meet him at Wal-Mart but that the two had previously arranged to meet at Captain D's next to the motel. Ms. Vineyard admitted that, after resetting the victim's telephone, she used it to take photographs with the defendant.

Ms. Vineyard conceded that she had been in jail since her arrest on January 31 and that, in exchange for her testimony, she would be sentenced to six years' probation.

With this evidence, the State rested. Following the trial court's denial of the defendant's motion for judgment of acquittal, the defendant elected to testify.

The defendant testified that he and Ms. Vineyard had traveled to Clarksville from Illinois to engage in prostitution. The defendant stated that he had met the victim prior to January 30 when the victim had sold marijuana to Ms. Vineyard and him. According to the defendant, he and Ms. Vineyard planned to purchase marijuana from the victim before going their separate ways. When the victim arrived at the motel room, Ms. Vineyard gave the victim $300, but the victim refused to permit Ms. Vineyard to accompany him to buy the marijuana from his supplier. The defendant then asked the victim to return their money, and the victim refused. At this point, the defendant asked the victim to leave his cellular telephone with them as "collateral." The victim initially agreed but then tried to leave the room with both the cash and his telephone. The defendant then "jumped up" and "hit him." The defendant claimed that his handgun fell out of his pocket onto the floor during the ensuing scuffle, but the defendant denied ever pointing the gun at the victim.

Based on this evidence, the jury convicted the defendant as charged of aggravated robbery. Following a sentencing hearing, the trial court sentenced the defendant as a Range I, standard offender to a term of 10 years' incarceration for the aggravated robbery conviction and as a Range II, multiple offender to a term of four years' incarceration for the felon in possession of a firearm conviction. In addition, the court sentenced the defendant to a term of 11 months and 29 days for both the evading arrest and the assault convictions and to a term of six months for the resisting arrest conviction. The court ordered the misdemeanor sentences to be served concurrently with – and the felon in possession sentence to be served consecutively to – the aggravated robbery conviction for a total effective sentence of 14 years. Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal.

In this appeal, the defendant contends that the evidence was insufficient to support his conviction and that the sentence imposed was excessive. We will address each issue in turn.

## I. Sufficiency

The defendant first contends that the evidence adduced at trial is insufficient to support his conviction of aggravated robbery. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, aggravated robbery is "robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a).

Here, the proof adduced at trial established that, on the evening of January 30, 2014, the victim was ambushed as he entered Ms. Vineyard's motel room. The defendant pointed a handgun at the victim and demanded that the victim give him "everything [he] had." After initially attempting to fight his way out of the room, the victim gave up after the defendant struck him with the handgun, and the defendant and

Ms. Vineyard stole the victim's cash, cellular telephone, and wallet. The defendant was arrested a short time later in possession of a handgun and over $500 in cash.

The defendant primarily takes issue with what he perceives to be a lack of evidence that the victim was ever placed in fear, thereby rendering the State's proof of the crime of aggravated robbery insufficient. The defendant's argument, however, is misplaced because the State was free to prove that the defendant accomplished the crime of aggravated robbery "by violence *or* putting the person in fear." T.C.A. § 39-13-401(a) (emphasis added). The first count of the defendant's indictment charges him with "violently" exercising control over the victim's property by placing the victim in fear through the use or display of a handgun. Thus, the charging instrument included both the elements of violence and placing in fear. Moreover, the trial court charged the jury that aggravated robbery includes the elements "that the defendant took such property from the person of another *by the use of violence or by putting the person in fear*." (Emphasis added). The proof established that the defendant pointed a handgun at the victim's head, and our supreme court has held that the "[p]ointing [of] a deadly weapon at the victim" is sufficient proof of violence. *State v. Allen*, 69 S.W.3d 181, 185 (Tenn. 2002).

Taking all of this evidence into consideration, we find that the evidence strongly supports the defendant's conviction of aggravated robbery.

## *II. Sentencing*

The defendant also contends that the trial court misapplied certain enhancement factors and that the trial court abused its discretion in ordering consecutive sentencing.

At the sentencing hearing, the trial court found three enhancement factors applicable: the defendant had a previous history of criminal convictions or behavior; the defendant was the leader in the commission of the offense; and the defendant had previously failed to comply with the conditions of release into the community. *See* T.C.A. § 40-35-114(1), (2), (8). The trial court found no mitigating factors to be applicable. With respect to the defendant's criminal history, the record indicates that the defendant had three prior felony convictions in Illinois: two 2010 convictions for "aggravated fleeing or attempting to elude a police officer" arising out of the same incident in December 2009 and one 2011 conviction for aggravated fleeing. In addition, the defendant had his probation revoked twice in 2010.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of

the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

With respect to the issue of the misapplication of enhancement factors, we need not tarry long over the defendant's claim because, even assuming that the trial court misapplied certain enhancement factors, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. Nothing in the record suggests that the trial court in this case "wholly departed from" the Sentencing Act. To the contrary, the record reflects that the trial court considered all the relevant principles associated with sentencing, including the enhancement and mitigating factors, when imposing the sentences in this case. Accordingly, we conclude that the record fully supports the length of these within-range sentences.

Turning to the defendant's claim regarding consecutive sentencing, our supreme court has held that the standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing when the "dangerous offender" category is used: the court must find that consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. *Id.* at 937-39; *see State v. Imfeld*, 70 S.W.3d 698, 707-08 (Tenn. 2002).

Here, the trial court based its decision to order consecutive sentencing on findings that the defendant had an extensive history of criminal activity and that the defendant was a dangerous offender. *See* T.C.A. § 40-35-115(b)(2), (4). Although the existence of a single category is sufficient to warrant the imposition of consecutive sentences, *see State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997), the trial

court failed to make the requisite *Wilkerson* findings, and we are not persuaded that the defendant's criminal history was such as to justify the extensive criminal history finding. Consequently, the trial court's ruling is not entitled to a presumption of reasonableness. *See Pollard*, 432 S.W.3d at 864. Thus, we are constrained to either "conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences" or "remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences." *Id.* (citing *Bise*, 380 S.W.3d at 705 & n.41). Because we find that the record is inadequate for this court to conduct a de novo review, we vacate the imposition of consecutive sentencing and remand to the trial court for the consideration of the *Wilkerson* factors in determining whether consecutive sentencing on the basis of the dangerous offender category is appropriate in this case.

*Conclusion*

Based upon the foregoing analysis, we affirm the defendant's convictions and the length of his sentences, but we vacate the imposition of consecutive sentencing and remand to the trial court for appropriate findings regarding sentencing alignment.

_____
JAMES CURWOOD WITT, JR., JUDGE